WILLIAM J. LEE,

        Petitioner,

    v.                                 Case No. 16-cv-930-pp

LISA AVILA,[1]
Superintendent, Sturtevant Transitional Facility,

        Respondent.

## ORDER DENYING WITHOUT PREJUDICE RESPONDENT'S MOTION TO DISMISS (DKT. NO. 9) AND SETTING BRIEFING SCHEDULE

In the summer of 2016, William Lee filed a petition for writ of *habeas corpus* challenging his 2009 judgment of conviction in Brown County Circuit Court on one count of armed robbery with use of force, as a repeater. Dkt. No. 1. On October 19, 2016, the respondent[2] filed a motion to dismiss the petition as untimely under 28 U.S.C. §2244(d)(1). The parties have fully briefed that motion. Because the respondent has not established that statutory tolling does

---

[1] At the time he filed the petition, the petitioner was in custody at the Oshkosh Correctional Institution, where Judy P. Smith is the warden; the petition named "Warden, Judy Smith" as the respondent. Dkt. No. 1 at 1. On October 31, 2016, the court received from the petitioner a notice that he had been transferred to the Sturtevant Transitional Facility. Dkt. No. 10. Because the correct respondent in a *habeas* case is the warden of the facility in which the petitioner is housed, and because Lisa Avila is the superintendent of the Sturtevant Transitional Facility, the court has Warden Smith with Superintendent Avila as the respondent.

[2] The petitioner had been moved to Sturtevant by the time the respondent filed this motion, so it was Superintendent Avila who filed the motion. Dkt. No. 9.

not apply, and did not address the doctrine of equitable tolling, the court will deny the motion to dismiss without prejudice, and will set a briefing schedule for the parties to address the court's concerns.

## I. Background

A jury found the petitioner guilty of robbery with the use of force. Dkt. No. 9-1 at 1. On February 20, 2009, the Brown County Circuit Court judge sentenced the petitioner to ten years in custody and fifteen years of extended supervision. Id. On April 27, 2009, Attorney Teresa Schmieder wrote to the petitioner, telling him that she had been appointed to represent him on his post-conviction claims. Dkt. No. 14-1 at 1. Attorney Schmieder told the petitioner that she was very busy with other matters, and thus would not be able to meet with him for thirty to forty-five days. Id.

On June 5, 2009, the petitioner wrote back to Attorney Schmieder, asking when she planned to visit him (given the fact that more than forty-five days had passed since she'd written him). Id. at 3. The petitioner wrote to counsel again on August 5, 2009, indicating that she'd still not met with him, that his family had been trying unsuccessfully to reach her, and asking whether she was representing him or not. Id. at 4. The petitioner wrote three more letters—dated November 6, 2009, January 18, 2010 and November 15, 2010—each indicating that the petitioner still had not heard from Attorney Schmieder. Id. at 5-7. Finally, on November 18, 2010, Attorney Schmieder wrote the petitioner, indicating that she was waiting on five transcripts from the circuit court case, and that she would set up a telephone conference with

him after she received the transcripts. Id. at 8-9. The petitioner took matters into his own hands and contacted the court reporter, learning that the court reporter had provided Attorney Schmieder with the last transcripts on December 20, 2010. The petitioner asked Schmieder to send him copies of the transcripts, so he could help with the appeal. Id. at 11.

The petitioner wrote Schmieder again on April 30, 2011, strongly reiterating that he wanted her to file an appeal, and asking where the transcripts were. Id. at 12. Attorney Schmieder responded on May 16, 2011, advising the petitioner that she had not been able to "find a viable avenue of appeal" for him. Id. at 13-14. She did not provide any further explanation of how she came to this conclusion. Attorney Schmieder told the petitioner that he had three options at that point: (1) he could accept her conclusion that he had no basis for an appeal, and she would close the case; (2) he could disagree with her that he had no basis for appeal, and she could file a no-merit report in the court of appeals; or (3) he could disagree with her that he had no basis for an appeal, and hire private counsel to review the case for him. Id.

The petitioner responded that he would not let Attorney Schmieder, or anyone else, demand "that [he] operate in the dark regarding [his] appeal and make a choice without providing [him] with [his] record to review." He refused to choose any of the three options until he had had the ability to review the record. Id. at 15.

Six days after the date on which the petitioner responded, Attorney Schmieder sent the petitioner another letter; she had not received his response,

3

so she reiterated the three options she'd presented in her prior correspondence. <u>Id.</u> at 16-17. The petitioner promptly sent Schmieder a copy of his original response. <u>Id.</u> at 18. On January 20, 2012, the petitioner wrote Schmieder another letter, indicating that he was coming to the conclusion that she had abandoned him, because she'd filed nothing for him and had yet to come and visit him or talk with him on the telephone. <u>Id.</u> at 19.

The two must have had the opportunity to talk at some point over the next year, because on February 1, 2013, Attorney Schmieder wrote to the petitioner regarding their "last conversation." <u>Id.</u> at 20. She indicated that she would send the petitioner copies of his transcripts "upon the conclusion" of her representation of him. She also stated that she believed that the petitioner had "released [her] from representation and that [he] had abandoned [his] appeal." <u>Id.</u> She acknowledged that the petitioner had told her during their conversation that this was not the case, and that he'd asked to meet with her. She told him she would be available to arrange a "courtesy" visit with him sometime after the second week of February. <u>Id.</u> At this point, the petitioner told Attorney Schmieder that he would take action against her if she did not send him all of his trial records. <u>Id.</u> at 21-23. Attorney Schmieder responded on February 11, 2013, stating that she was providing the petitioner with copies of his transcripts and the court record, and that she was closing her file. <u>Id.</u> at 24.

Three days letter, Schmieder sent the petitioner another letter. <u>Id.</u> at 25. She informed him that she'd learned from someone at the Wisconsin State Public Defender's Office that in order for her to be "discharged" from acting as

the petitioner's lawyer, either the petitioner needed to sign a stipulation asking her to withdraw (which she'd file with the Brown County Circuit Court for approval), or she needed to file her own motion to withdraw in the circuit court. She informed the petitioner that if he did not stipulate to discharge her, or if the circuit court denied her motion to withdraw, she would file a no-merit report. She told the petitioner that if she did not hear from him in two weeks, she would file the motion to withdraw. Id.

A few days later, Joseph Ehmann (who was the first assistant in the Wisconsin State Public Defender's Office) wrote to the petitioner, conceding that Attorney Schmieder's conduct had not been appropriate. Id. at 26-27. Attorney Ehmann told the petitioner that he had the same options Schmieder had given him earlier: Attorney Schmieder could file a motion in the court of appeals to "revive" his lapsed appeal deadline (and if the court of appeals granted that motion, Schmieder could file a no-merit report), or she could ask the court of appeals to revive the lapsed appeal deadline and file a motion in the circuit court asking to withdraw as counsel (which, if the court granted it, would have allowed the petitioner to proceed on his own). Id.

About two months later, the petitioner, acting on his own behalf, filed *habeas* petitions in all three Wisconsin courts—the Brown County Circuit Court, the Court of Appeals and the Wisconsin Supreme Court. It appears that the petitioner filed all three petitions on April 12, 2013. See State v. Lee, Case No. 2002CF000886 (Brown County Circuit Court) (accessible at https://wcca.wicourts.gov). The Wisconsin Court of Appeals struck the petition

5

he filed there on April 23, 2013. <u>Lee v. Kemper</u>, Appeal No. 2013AP000829-W (Wisconsin Court of Appeals, District III) (accessible at https://wscca.wicourts.gov). The court struck the petition "because it was not verified as required by Wis. Stat. § 782.04 (2013-14)." Dkt. No. 9-2 at ¶3.

On April 19, 2013, Schmieder filed a motion to withdraw as counsel in the Brown County Circuit Court. <u>State v. Lee</u>, Case No. 2002CF000886 (Brown County Circuit Court) at docket entry 58 (accessible at https://wcca.wicourts.gov). The circuit court never ruled on that motion, but on October 4, 2013, Attorney Schmieder filed in the court of appeals a motion to extend the time for filing a no-merit report, based on her difficulties in receiving and reviewing fifty-three transcripts from the case, as well as her belief that the petitioner had decided not to appeal. Dkt. No. 9-2 at ¶4. On October 7, 2013, the Wisconsin Court of Appeals granted Schmieder's motion to withdraw, and extended the deadline for filing a no-merit notice of appeal to November 29, 2013 and the deadline for filing a no-merit report to December 6, 2013. Dkt. No. 9-3 at 2-3.

On November 26, 2013, the Wisconsin Supreme Court dismissed the *habeas* petition the petitioner had filed *there* as moot. <u>Lee v. Kemper</u>, 2013AP000823-W (Wisconsin Supreme Court) (accessible at https://wscca.wicourts.gov). The Supreme Court found the petition moot because the Court of Appeals had extended the petitioner's deadline to file a no-merit appeal. Dkt. No. 9-2 at ¶5. This left pending the petitioner's Brown County Circuit Court *habeas* petition.

On December 2, 2013, Attorney Schmieder filed a no-merit notice of appeal. Id. at ¶6. The petitioner promptly filed a motion in the court of appeals, asking to fire Attorney Schmieder, to strike the no-merit notice of appeal and to obtain permission to proceed *pro se* with either an appeal or a post-conviction motion. The court of appeals granted that request on December 27, 2013—it granted the motion to discharge Attorney Schmieder, dismissed the no-merit appeal without prejudice and gave the petitioner sixty days (until February 25, 2014) to file "a postconviction motion." Dkt. No. 9-3 at 2.

A review of the Brown County Circuit Court docket for State v. Lee, Case No. 2002CF000886 (Brown County Circuit Court) (accessible at https://wcca.wicourts.gov) shows that the petitioner did not file a post-conviction motion, either by February 25, 2014 or at any time after the court of appeals issued its order setting the deadline.

The petitioner's April 12, 2013 *habeas* petition, however—one of the three he'd filed on that day, one at each level of the Wisconsin court system—remained pending in the Brown County Circuit Court. On February 7, 2014[3], the Brown County Circuit Court denied the *habeas* petition. Dkt. No. 9-2 at ¶6. The petitioner appealed, and the Wisconsin Court of Appeals affirmed the circuit court, finding that the petitioner had filed in the wrong forum (the circuit court, rather than the court of appeals), that he had other adequate

---

[3] The Wisconsin Court of Appeals indicated that the circuit court issued its decision on February 7, 2014, while the docket for the Brown County Circuit Court lists the date as February 10, 2014. State v. Lee, Case No. 2002CF000886 (Brown County Circuit Court) at docket entry 34.

remedies at law (raising his issues in the no-merit process, or in a post-conviction motion under Wis. Stat. §974.06), and that he had failed to establish ineffective assistance by his appellate attorney. Dkt. No. 9-2. The Wisconsin Supreme Court denied the petition for review on January 11, 2016. Dkt. No. 9-4 at docket entry 2. The petitioner filed this federal petition in the Eastern District of Wisconsin on June 21, 3016.[4] Dkt. No. 1.

## II.    Discussion

### A.    The Statute of Limitations Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs the grant of a writ of *habeas corpus*. Under AEDPA, a *habeas* petitioner has one year from the date his conviction becomes final to file a federal *habeas* petition. 28 U.S.C. §2244(d)(1). The limitation period runs from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[4] This court's docket reflects that it received the federal *habeas* petition on July 18, 2016. For a discussion of why the court is using June 21, 2016 as the petition filing date, see Section II(B)(1) below.

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). AEDPA also suspends the running of the one-year limitations period for state prisoners who properly file "an application for state post-conviction or other collateral review." 28 U.S.C. §2244(d)(2).

### B.  The Respondent's Calculations in Support of Her Argument that the Federal Petition is Time-Barred Under AEDPA

#### 1.  *The Filing Date for the Federal Petition*

In order for the court to calculate whether the AEDPA one-year statute of limitations had run by the time the petitioner filed his federal *habeas* petition, it first must determine the date on which the petitioner filed his federal *habeas* petition. This should be simple: the court's docket shows that this court received the petitioner's federal *habeas* petition on July 18, 2016. Dkt. No. 1. It seems reasonable that July 18, 2016 would be the petition date for the purposes of the AEDPA calculations.

The respondent, however, notes that along with petition this court received on July 18, 2016, the petitioner filed a cover letter dated July 13, 2016. Dkt. No. 9 at 7 n.4. In that letter (addressed to Sofron Nedilsky, who was no longer the clerk of court for the Eastern District of Wisconsin as of that date, and had not been for some time), the petitioner stated that on June 21, 2016, he had had mailed his petition to "the Eastern District Federal Court in Green Bay, Wisconsin." See Dkt. No. 1-1. The petitioner stated that on July 5, 2016, the documents he'd mailed came back to him; the "postman" told him that "the Court was vacant and they were unable to forward the legal papers."

Id. The petitioner indicated that he was "enclosing the returned, as it was sent to me by the clerk." Id. What the petitioner enclosed was his petition, dkt. no. 1, and seven pages of attachments, dkt. no. 1-2. The only reference in the attachments to an earlier filing is a single-page document with "**IX. CERTIFICATE OF INMATE MAILING**" at the top. Dkt. No. 1-2 at 7. This single page is signed by the petitioner, and certifies that he put a *habeas* petition in the mail on June 21, 2016. Id. It does not provide the address to which he mailed that petition, and there is no evidence that the petition he mailed is the one this court received on July 18, 2016.

The petitioner's cover letter stated that the "postman" told him that the court to which he mailed his documents on June 21, 2016 was "vacant." The letter also stated, however, that the petitioner was enclosing the documents that were returned to him, "as . . . sent to [him] by the clerk." Dkt. No. 1-1. If the *post office* returned the petitioner's materials to him as undeliverable, no court "clerk" would have returned them to him. If the post office delivered the documents to a court, and *the clerk of that court* rejected them, then whatever court received the documents was not "vacant." Because the petitioner did not provide any information regarding the address to which he mailed his documents on June 21, 2016, the court does not know whether he used the correct address for the district court's building in Green Bay. The court suspects that the defendant did not use the correct address for the Green Bay court; if he had, the post office would have delivered the documents to the clerk's office there; that office would have accepted the documents (as it is

required to do), then considered whether the petitioner had filed in the appropriate division of the Eastern District.

The respondent has decided to deem the petitioner's federal *habeas* petition as having been filed on June 21, 2016—the date the petitioner asserts that he put the petition in the mail to the Eastern District's Green Bay clerk's office. Dkt. No. 9 at 7 n.4. In support of this decision, the respondent cites Houston v. Lack, 487 U.S. 266 (1988). In Lack, the Supreme Court held that a prisoner's notice of appeal from the denial of a *habeas* petition was timely filed when he gave it to prison authorities to mail, even though the district court did not receive the notice of appeal until four days after the appeal deadline. Id. at 270-271. This rule—that a prisoner "files" something when he delivers it to the prison authorities for mailing—has come to be known as the "mailbox rule." Ray v. Clements, 700 F.3d 993, 1002 (7th Cir. 2012). The Seventh Circuit has held that the mailbox rule applies to a prisoner filing a *habeas* petition, and that it applies in the context of determining whether the AEDPA statute of limitations has run. Id. at 1004.

The Seventh Circuit held that when the state raises an AEDPA statute of limitations defense in a federal *habeas* case, the burden shifts to the petitioner to "come forward with some evidence to support his claim that, with the benefit of the . . . mailbox rule, 365 countable days have not elapsed from the time his state-court judgment became final to the time he filed his federal habeas petition." Id. at 1008 (citations omitted). If the petitioner comes forward with

that evidence, the Seventh Circuit has said, the burden shifts back to the state to prove that the one-year AEDPA period has run. Id.

The petitioner did not address this issue in his response to the motion to dismiss. Likely that is because the respondent has decided to accept the petitioner's assertion in his cover letter of July 13, 2016 that he put the documents in the mail to the court's Green Bay building on June 21, 2016, but that they were returned to him. While it is not clear to this court that the petitioner *did* attempt to send his petition to the court at its Green Bay division, or that whatever he put in the prison mail on June 21, 2016 was the petition that ended up filed on July 18, 2016, the court will—as has the respondent—use the June 21, 2016 date for the purposes of the statute-of-limitations calculations.

2.    *The Respondent's Calculations*

Under Wis. Stat. §809.30(2)(h), a convicted defendant must file either a "postconviction" motion[5] or notice of appeal within sixty days of the filing of the last transcript. The docket for the Brown County Circuit Court case shows that the last transcript was filed in the circuit court case on December 21, 2010. State v. Lee, Case No. 2002CF000886 (Brown County Circuit Court) at docket entry 63 (accessible at https://wcca.wicourts.gov). So, if the petitioner wanted

---

[5] A "postconviction" motion, under Wisconsin law, is different from a *habeas* petition. A post-conviction motion is a motion to vacate, set aside or correct a sentence under Wis. Stat. §974.06. A defendant can't file a *habeas* petition in state court if he hasn't first filed a §974.06 motion. Wis. Stat. §974.06(8).

to challenge his conviction or sentence, he needed to file a notice of appeal from his conviction, or a §974.06 motion, by February 19, 2011.[6]

The petitioner did not file either document by that deadline. As the facts demonstrate, the petitioner's failure to timely file an appeal or a §974.06 motion may not have been his choice; by the deadline, he'd been trying for some twenty-one months to get Attorney Schmieder to talk with him about an appeal, and to file an appeal for him. As of the February 19, 2011 deadline for the petitioner to file either a notice of appeal or a §974.06 motion, the petitioner still was waiting for Attorney Schmieder to respond to his request for copies of his transcripts. If that was as far as things got, the petitioner's conviction would have become final on February 19, 2011, and his June 21, 2016 federal *habeas* petition filed in the Eastern District of Wisconsin would be time-barred.

The respondent concedes, however, that that was not as far as things got. Two and a half years later, Attorney Schmieder filed a motion in the court of appeals, asking it to extend the deadline for her to file a no-merit report. The court of appeals granted that motion, extending the deadline for filing a notice of no-merit appeal to November 29, 2013 and the deadline for filing the no-merit report to December 6, 2013. Dkt. No. 9-3 at 2-3. In the words of Attorney Ehmann of the State Public Defender's Office, the court of appeals' order granting Attorney Schmieder's motion "revived" the petitioner's lapsed appeal

---

[6] The respondent calculated the sixty-day deadline at February 21, 2011. Dkt. No. 9 at 5. By the court's calculations, February 21, 2011 was sixty-two days after December 21, 2011. Either way, the petitioner did not meet the deadline.

13

deadline. When a state court reopens the period for direct review, the conviction "is rendered nonfinal for purposes of 2244(d)(1)(A) during the pendency of the reopened appeal." <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 120 n. 4 (2009). As of October 7, 2013, then—the date on which the court of appeals granted Attorney Schmieder's motion to extend the no-merit deadlines—the petitioner's conviction became "nonfinal," and the one-year federal *habeas* clock under AEDPA had not started.

On December 2, 2013, Attorney Schmieder filed the notice of no-merit appeal. Dkt. No. 9-3 at 2. Four days later, on December 6, 2013, the petitioner filed a motion in the appellate court to fire Attorney Schmieder, strike the notice of no-merit appeal and obtain permission to proceed *pro se* on either an appeal or post-conviction motion. <u>Id.</u> On December 27, 2013, the Wisconsin Court of Appeals granted the motion to discharge Attorney Schmieder, dismissed the petitioner's appeal without prejudice and gave him sixty days to file a post-conviction motion (presumably under Wis. Stat. §974.06). <u>Id.</u> The court calculates that the sixty-day extension the court of appeals gave the petitioner expired on February 25, 2014. The respondent notes that, while the court of appeals docket shows that that court issued the reinstatement order on December 27, 2013, the Brown County Circuit Court docket entry for the reinstatement order is dated January 2, 2014. Dkt. No. 9 at 6 n.3. The respondent elected to use the January 2, 2014 date for her calculations, erring in favor of the petitioner and concluding that the sixty-day period expired on March 3, 2014. <u>Id.</u>

Whether the sixty-day period expired on February 25, 2014 or March 3, 2014, the petitioner did not do what the court of appeals instructed him to do. He did not file a post-conviction motion between December 27, 2013 and February 25, 2014, or between January 2, 2014 and March 3, 2014. Arguably, this means his conviction became final sixty days after the court of appeals issued its order. If so, the defendant needed to file his federal *habeas* petition by February 25, 2015 (or by March 3, 2015, under the respondent's calculations) to meet AEDPA's one-year limitations deadline. Again, his June 2016 petition would be time-barred in this scenario—by over a year.

But there is another scenario that could impact the AEDPA one-year limitation deadline. AEDPA says that if a petitioner "properly" files an application for state post-conviction or other collateral review on a particular claim, the time during which that properly-filed application is pending does not count toward the one-year statute of limitations. 28 U.S.C. §2244(d)(2). The *habeas* petitions that the petitioner filed in April 2013 at all three levels of the Wisconsin state courts were a form of "other collateral review." But in order for any one of those state *habeas* petitions to stop the AEDPA clock, the petitioner must have "properly" filed them.

The Seventh Circuit has held that state law determines whether a petition has been properly filed; if the state court accepted and entertained the petition on the merits, it was "properly filed;" if the court rejected the petition as procedurally irregular, it was not "properly filed." Freeman v. Page, 208 F.3d 572, 576 (7th Cir. 2000). To determine whether any of the three petitions the

petitioner filed on April 12, 2013 were "properly filed," then, this court needs to know whether any of the three state courts decided the merits of the petition, or simply rejected the petition for a procedural irregularity.

The respondent argues that Wisconsin law requires a litigant to file an ineffective assistance of appellate counsel claim in the appellate court that heard the defendant's direct appeal. Dkt. No. 9 at 8; State v. Knight, 168 Wis. 2d 509, 522 (1992). The petitioner *did* challenge his appellate lawyer's effectiveness in a *habeas* petition in the Wisconsin Court of Appeals. That court, however, rejected that petition, because the petitioner failed to verify it, as required by Wis. Stat. §782.04. That statute says that a person filing a petition for a writ of *habeas* in a Wisconsin court has to verify the petition by attesting to particular facts (such as the fact that the person filing the application for the writ is "restrained of personal liberty," saying who is imprisoning the applicant and where, and other facts). Because the petitioner did not verify the petition he filed in the court of appeals, and because the court of appeals rejected the petition due to that procedural irregularity, that petition was not "properly filed."

The petitioner filed two other petitions in two other courts, however, and while the respondent provided information about why the Wisconsin Supreme Court dismissed the petition filed there, she did not explain why the Brown County Circuit Court denied the petition filed *there*. This court does not have a copy of the petition filed in the circuit court, or the circuit court's decision. The respondent provided only the Wisconsin Court of Appeals's decision affirming

16

the circuit court's denial of the *habeas* petition. Dkt. No. 9-2. One of the reasons cited by the court of appeals for affirming the Brown County court's decision was the fact that the petitioner had filed the *habeas* petition in the wrong court. Dkt. No. 9-2 at ¶8. That is true; as the court noted above, a criminal defendant must file a claim for ineffective assistance of *appellate* counsel in the *court of appeals*, not in the circuit court. State *ex rel.* Santana v. Endicott, 709 N.W.2d 515, 519 (Wis. Ct. App. 2005).

But the court of appeals affirmed the circuit court on two other grounds: (1) that the petitioner had an adequate remedy at law (he could have raised the issues by following through with the no-merit process or by presenting them in the postcovniction motion or in his own §974.06 motion); and (2) that his claim failed on the merits. The court of appeals specifically held that Schmieder's delay in filing the notice of appeal did not constitute abandonment of her client. Dkt. No. 9-2 at ¶¶10, 11. This last basis for the appellate court's decision implies that the Brown County circuit court may have considered the merits of the petitioner's *habeas* petition, and may have based its dismissal on the merits.

Without the benefit of the circuit court's decision, this court cannot determine whether, as a matter of law, the petitioner "properly filed" the petition he filed in the Brown County Circuit Court. If the circuit court ruled on the merits of his petition, rather than dismissing the petition on a procedural irregularity, the petition was "properly filed," in which case, the filing of the

*habeas* petition in the Brown County Circuit Court could have tolled the running of the AEDPA clock.

Perhaps anticipating that the court would have questions on this issue, the respondent cited cases holding that an untimely petition may not constitute a "properly filed" petition even if the court's denial of the petition on the basis that it was procedurally incorrect is "entangled with the merits." Carey v. Saffold, 536 U.S. 214, 226 (2002); see also Brooks v. Walls, 301 F.3d 839, 841 (7th Cir. 2002). Saffold involved a situation where the state court had dismissed the petitioner's *habeas* petition "on the merits and for lack of diligence," without further explanation. Saffold v. Newland, 250 F.3d 1262, 1267 (9th Cir. 2000), reversed by Carey v. Saffold, 536 U.S. 214 (2002). The Ninth Circuit, noting that the state court had decided the petitioner's claim on its merits, declined to find that because the state court also had mentioned a procedural irregularity, the state *habeas* petition had not been "properly filed." Id. On *certiorari*, the Supreme Court held that if a state court "clearly rule[s]" that there is a procedural irregularity, the petition was improperly filed—and wouldn't toll the AEDPA clock—"regardless of whether [the state court] also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits." Carey v. Saffold, 536 U.S. at 226. The Supreme Court could not determine on the record before it, however, whether the state court *had* specifically found that the petitioner's state-court *habeas* petition was untimely. Id. As a result, the Supreme Court remanded the case. In Brooks, the Seventh Circuit held that if a petitioner did not timely file his state-

court *habeas*, the state-court *habeas* was not "properly filed," even if the state court decided the merits of the case. Brooks, 301 F.3d at 840-841.

What these two cases tell us is that *if* the Brown County Circuit Court analyzed the procedural propriety of the petitioner's *habeas* claim, and came to a conclusion that it was procedurally irregular, then the petitioner's filing of his *habeas* claim in the Brown County Circuit Court did not stop the AEDPA clock. On the other hand, if the Brown County Circuit did not consider, and decide, that the petition was procedurally irregular, and instead based its decision to dismiss on the merits of the petitioner's ineffective assistance of counsel claims, then the filing of that petition *did* toll the AEDPA clock. Like the Court in Saffold, this court cannot determine the answer to that question, because it does not have a copy of the Brown County Circuit Court's decision.

3.    *The Petitioner's Response*

In his response to the motion to dismiss, the petitioner went through, in detail, every facet of his case, and those details raised an additional issue for the court's consideration. Dkt. No. 14. He argued that he had viable issues for appeal—he alleges that his trial-court counsel was ineffective, and that the state prosecutor admitted on the first day of trial that the charges needed to be dropped due to a faulty show-up identification. Id. at 3-4. The petitioner asserted that, despite having viable issues for appeal, and despite his frequent efforts to establish contact with her, Attorney Schmieder did nothing. The petitioner points out that he told Schmieder in his June 5, 2009 letter that he had two witnesses who had new evidence that would prove the state's key

witness had lied under oath at trial, and who would verify his alibi, yet Schmieder did nothing with that information. Id. at 4. He recounted all of the efforts he made to contact Schmieder over the years prior to the filing of the transcripts. Id. at 4-7. He recounts Schmieder's failures and, in his view, untruths after the last transcript was filed in December 2011. Id. at 8-10.

The petitioner argues that all three levels of the Wisconsin courts had jurisdiction to hear his state *habeas* petitions, and he cites to various provisions of the Wisconsin Constitution and Wisconsin statutes. Id. at 11. He asserts that, during evidentiary hearings in the Brown County Circuit Court's consideration of his *habeas* petition, Schmieder admitted that she had not been competent and had abandoned the petitioner's appeal. Id. at 12. He insists that he did not want Schmieder to file a no-merit report, and that he told the Brown County judge that—he wanted Schmieder to file an appeal. Id.

At the end of his response, the petitioner argued that the only state court orders which "concern this federal court's jurisdiction" were the Brown County Circuit Court's February 7, 2014 order denying his state *habeas* petition; the court of appeals' October 13, 2015 order affirming the circuit court's decision; and, although he doesn't mention it directly, the Wisconsin Supreme Court's January 11, 2016 denial of his petition for review. Id. at 13.

Reading between the lines of the petitioner's response, he argues (a) that he filed his federal *habeas* petition within one year of the date his conviction became final, because he filed it within one year of the Supreme Court's January 11, 2016 denial of his petition for review of the dismissal of his state

*habeas* petition, and (2) that it would be unfair for this court to allow Schmieder's ineffective representation—her abandonment of him—to prevent him from bringing his claims in federal court.

### 4.    *Equitable Tolling*

The doctrine of equitable tolling excuses untimely filing when a petitioner can show that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented a timely filing. Holland v. Florida, 560 U.S. 631, 649 (2010). The Seventh Circuit recently reminded district courts that, when they are considering whether to apply the doctrine of equitable tolling, they must "evaluate the circumstances holistically, considering 'the entire hand that the petitioner was dealt' rather than taking each fact in isolation." Gray v. Zatecky, 865 F.3d 909,912 (7th Cir. 2017)(citing Socha v. Boughton, 763 F.3d 674, 686 (7th Cir. 2014)). The court noted that equitable tolling is "rare," but that this did not mean that it "exist[s] in name only." Id. Instead, the equitable tolling inquiry is a "highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." Id. The equitable tolling standard "is a demanding standard." Id.

The Seventh Circuit has recognized that "[a]bandonment by counsel" can constitute one of those "extraordinary circumstances" that can stand in a petitioner's way and prevent him from timely filing his petition. Schmid v. McCauley, 825 F.3d 348, 350 (7th Cir. 2016) (citing Maples v. Thomas, 132 S. Ct. 912 (2012), in which the Supreme Court concluded that the petitioner did not have functioning counsel during the pendency of his state post-conviction

motion, because two of his lawyers left their law firm while the petition was pending, without telling him, and the local counsel agreed to appear only to move the other two lawyers into the court *pro hac vice*). The Seventh Circuit also has acknowledge that "inability to access vital papers" can constitute such an "extraordinary circumstance." Id. (citing Socha, 763 F.3d 674), in which the Seventh Circuit found that a petitioner's continual and fruitless efforts to get his legal documents from his lawyer supported equitable tolling).

In this case, the petitioner repeatedly has asserted that Attorney Schmieder abandoned him—he argues that the fact that she did almost nothing (other than obtain and, perhaps, review his transcripts) between April 27, 2009 and October 4, 2013 means that, for all intents and purposes, he did not have a lawyer during that time. The respondent counters that no matter what happened prior to October 2013, Attorney Schmieder eventually did move for an extension of time to file a no-merit brief, which led to the Wisconsin Court of Appeals's October 7, 2013 order reinstating the petitioner's ability to challenge his conviction, and to Attorney Schmieder filing the no-merit notice of appeal. Dkt. No. 16 at 2.

Schmieder may have effectively left the petitioner to his own devices up to that point, but as soon as she filed the no-merit notice of appeal, the petitioner was able to ask the court of appeals to discharge her. He did that immediately, and the court granted his request on either December 27, 2013 or January 2, 2014. As of at least January 2, 2014, the petitioner was free to take any action he chose. He could have, as the Wisconsin Court of Appeals later

noted, used the no-merit process (which Schmieder had started) to raise all ten of the issues he believed were viable for an appeal. Dkt. No. 9-2 at 4-5. He could have done what the court of appeals told him to do, and filed a post-conviction motion in the Brown County Circuit Court within sixty days. The petitioner did not take either of these routes. Instead, he waited for a decision on the Brown County *habeas* petition.

The respondent argues that the petitioner "chose" to rely on the state *habeas* petition, rather than pursuing the no-merit process or filing a post-conviction motion, and that that decision was "fatal," because the circuit court was not the appropriate place to challenge his appellate counsel's representation. Dkt. No. 16 at 2. But in the context of equitable tolling, the court considers whether something outside the petitioner's control caused him to make that "fatal" choice.

It appears from the petitioner's opposition to the motion to dismiss that there was vigorous litigation of the *habeas* petition in the Brown County Circuit Court. Dkt. No. 14 at 11-12. The Brown County Circuit Court docket shows that that court held a motion hearing on May 10, 2013, another on August 6, 2013, and status conferences on September 6 and September 11, 2013. State v. Lee, Case No. 2002CF000886 (Brown County Circuit Court) at docket entries 54, 48, 45 and 44 (accessible at https://wcca.wicourts.gov). The petitioner states that at the September 11, 2013 hearing, "the judge postponed making a ruling on the Writ to allow counsel to go to the Court of Appeals on a request to file a late No Merit Report against the petitioner to undermine his Write [sic]

process." Dkt. No. 14 at 12. And on February 7, 2014 or thereabout, the circuit court issued a decision denying the *habeas* petition. Likely the petitioner—who is not a lawyer, and is not trained in Wisconsin *habeas* law—assumed that because the Brown County Circuit Court considered, and ruled on, the merits of his petition, it must be a validly-filed petition.

A petitioner's lack of legal training, standing alone, is not enough to warrant equitable tolling. Socha, 763 F.3d at 685. The Seventh Circuit noted that over 90% of prisoners who filed *habeas* petitions lacked legal training. Id. It also held that "lack of legal knowledge, another feature shared by the overwhelming majority of prisoners, by itself [was not] enough to justify equitable tolling." Id. (citation omitted). But the petitioner's reliance on his Brown County *habeas* petition to address his ineffective assistance claims does not appear to have been based solely on his lack of legal training or lack of legal knowledge. It also may have been based on the circuit court's own conduct—conduct which may have led the petitioner to the not-unreasonable conclusion that he didn't need to file anything else after Attorney Schmieder was discharged, because his issues would be addressed in the state *habeas* litigation. Because this court does not have any information about what happened in the circuit court, it cannot tell whether anything in the circuit court *habeas* litigation would have put the petitioner on notice that the circuit court did not have the authority to grant him what he wanted—reinstatement of his appeal rights.

The petitioner's opposition to the motion to dismiss raises another issue that possibly could justify application of the equitable tolling doctrine. In his brief, the petitioner states that "counsel failed to turn over the files as required by law" and that "this refusal to turn over all files remains today." Dkt. No. 14 at 3. Like the attorney in <u>Socha</u>, 763 F.3d at 686, it appears that between the end of 2011 and (perhaps) February 2013, Attorney Schmieder refused to provide the petitioner with any of his records, including the transcripts, "despite a stream of requests" over a number of years. In a letter dated February 11, 2013, Attorney Schmieder indicated that she was providing to the petitioner "copies of the record and the court record;" the letter indicates that it was accompanied by an enclosure. Dkt. No. 14-1 at 24. But Attorney Ehmann's February 18, 2013 letter to the petitioner told him that if he chose to discharge Schmieder, Schmieder would send the petitioner his file "when the court releases her." Dkt. No. 14-1 at 27. Ehmann further stated that if the petitioner chose the no-merit option, Schmieder would send him "a copy of the transcripts and record" so that he could file a response to the no-merit report. <u>Id.</u> Ehmann's letter makes it sound as if the petitioner was not going to receive his records until either the court of appeals discharged Schmieder or she filed the no-merit report. There is nothing in the record to indicate whether Schmieder ever provided the petitioner with documents, and if so, what those documents were.

If Schmieder did provide the petitioner with his legal documents and transcripts before the expiration of the deadline for him to participate in the

no-merit process, or to file a post-conviction motion, that would impact the equitable tolling question. In <u>Gray</u>, the Seventh Circuit declined to apply equitable tolling in a situation where, even though the petitioner had waited 113 days for the state court of appeals to give him his case record, he still obtained the record with forty-three days left before his AEDPA deadline expired. 865 F.3d at 913. On the current record, the court cannot tell whether this petitioner's situation is more similar to the facts of <u>Socha</u>, or those of <u>Gray</u>. The court cannot make a final determination on the question of whether the petitioner's §2254 petition was untimely until the parties directly address the court's concerns regarding statutory and equitable tolling.

## III. Conclusion

The court **DENIES WITHOUT PREJUDICE** the respondent's motion to dismiss petition for writ of *habeas corpus*. Dkt. No. 9.

The court **ORDERS** that within thirty (30) days of the date of this order, the petitioner shall file a brief in support of his petition, focusing on whether the court should apply the doctrines of statutory and equitable tolling. The court further **ORDERS** that the respondent shall file an opposition brief within thirty (30) days of the date the court dockets the petitioner's brief. The court further **ORDERS** that the petitioner shall file his reply, if any, within twenty-

one (21) days of the date he receives the respondent's opposition brief.

Dated in Milwaukee, Wisconsin this 23rd day of January, 2018.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**