WILLIAM J. LEE,

                Petitioner,

                                        Case No. 16-cv-930-pp

    v.

LISA AVILA,

                Respondent.

## ORDER DENYING *HABEAS* PETITION (DKT. NO. 1), DISMISSING CASE AND DENYING CERTIFICATE OF APPEALABILITY

On July 18, 2016, the petitioner, who is incarcerated at Oshkosh Correctional Institution and representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2009 judgment of conviction in Brown County for armed robbery. Dkt. No. 1. Two months later, the court screened the petition, allowed the petitioner to proceed on his claims and ordered the respondent to answer or otherwise respond. Dkt. No. 6.

On October 19, 2016, the respondent filed a motion to dismiss the petition. Dkt. No. 9. In January of 2018, the court denied the motion without prejudice and ordered further briefing focusing on statutory and equitable tolling. Dkt. No. 17. The petitioner filed a brief in support of the petition two months later. Dkt. No. 20. The respondent followed with a brief in opposition. Dkt. No. 24. The court will deny the petition because it is untimely, and neither statutory nor equitable tolling applies.

## I.    Background

### A.    Petitioner's Conviction and Appointment of Attorney Schmieder

On October 8, 2008, a Brown County jury found the petitioner guilty of armed robbery with the use of force. Dkt. No. 9-1 at 1. The court sentenced the petitioner to ten years of confinement followed by fifteen years of extended supervision. Id. On April 27, 2009, Attorney Teresa Schmieder wrote to the petitioner, telling him that she had been appointed as the petitioner's postconviction counsel but stating that due to her work schedule, she would not be able to meet for thirty to forty-five days. Dkt. No. 14-1 at 1. Letters from the petitioner to Schmieder indicate that by November 15, 2010 the two had not met. Id. at 3-7. Schmieder wrote the petitioner on November 18, 2010, informing him that she was waiting for five more transcripts in his case and that they would talk on the phone when she received them. Id. at 8-9. The petitioner wrote back in January 2011, stating that he wanted Schmieder to file an appeal on his behalf and send him transcripts of his court records so he could help. Id. at 11. In April 2011, the petitioner wrote Schmieder again, reiterating his desire to review his transcripts and appeal his conviction. Id. at 12.

About two weeks later, Schmieder informed the petitioner that she was unable to "find a viable avenue of appeal." Id. at 13-14. Schmieder told the petitioner that he had three options: (1) he could accept her analysis that he had no meritorious appeal, and she would close the case; (2) he could disagree with her analysis, and she would file a no-merit report in the Wisconsin Court

of Appeals; or (3) he could disagree with her analysis and retain private counsel to review his case. Id. The petitioner responded that he wanted to review his court records before deciding how to proceed. Id. at 15. Six days later, Schmieder wrote the petitioner indicating that she had not received a response. Id. at 16-17. Her letter laid out the same three options she had described in her prior letter. Id. The petitioner replied with a copy of his previous response. Id. at 18. On January 20, 2012, the petitioner again wrote Schmieder, explaining that because she had not yet visited, called or filed anything on his behalf, he believed she had abandoned him. Id. at 19.

This court's January 23, 2018 order recounted the continuing breakdown of the relationship between the two:

> The two must have had the opportunity to talk at some point over the next year, because on February 1, 2013, Attorney Schmieder wrote to the petitioner regarding their "last conversation." Id. at 20. She indicated that she would send the petitioner copies of his transcripts "upon the conclusion" of her representation of him. She also stated that she believed that the petitioner had "released [her] from representation and that [he] had abandoned [his] appeal." Id. She acknowledged that the petitioner had told her during their conversation that this was not the case, and that he'd asked to meet with her. She told him she would be available to arrange a "courtesy" visit with him sometime after the second week of February. Id. At this point, the petitioner told Attorney Schmieder that he would take action against her if she did not send him all of his trial records. Id. at 21-23. Attorney Schmieder responded on February 11, 2013, stating that she was providing the petitioner with copies of his transcripts and the court record, and that she was closing her file. Id. at 24.

Dkt. No. 17 at 4.

Schmieder followed up with another letting informing the petitioner that for her to withdraw as his attorney, they would need to file a stipulation and

3

seek the circuit court's approval, or she would need to file a motion to withdraw with the circuit court. Dkt. No. 14-1 at 25. She stated that if she did not hear back within two weeks, she would file the motion. Id.

The petitioner contacted the Wisconsin State Public Defender's Office, asserting that Schmieder abandoned his appeal. Id. at 26. The first assistant in the Wisconsin State Public Defender's Office, Joseph Ehmann, followed up with the petitioner a few days later; Attorney Ehmann stated that Schmeider's conduct had been inappropriate, and that the petitioner still had the same three options for proceeding with his appeal. Id. at 26-27. As Ehmann stated in his letter to the petitioner:

> If you want Attorney Schmieder to file a no-merit report, she will file a motion in the court of appeals to revive your lapsed appeal deadline and if it is granted, will file a no-merit report. If you want to proceed without an appointed appellate attorney, Attorney Schmieder will file a motion in the court of appeals to revive your lapsed appeal deadline and a motion in the circuit court to withdraw as counsel. If you choose to have Attorney Schmieder withdraw, no other public defender attorney will be appointed for you. If she withdraws and the court grants the motion to revive your appeal deadline, you will be responsible for all aspects of your appeal case. You will be responsible for complying with all deadlines and court rules.

Id. at 26-27.

### B.   State _Habeas_ Petitions and Reinstatement of Direct Appeal Rights

About two months later—on April 12, 2013—the petitioner filed three _pro se habeas_ petitions; he filed one in the Brown County Circuit Court, one in the Wisconsin Court of Appeals and one in the Wisconsin Supreme Court. Dkt. No. 9-2 at 2; see also State v. Lee, Brown County Case No. 2002CF000886 (available at https://wcca.wicourts.gov). The Wisconsin Court of Appeals

4

struck the petition "because it was not verified as required by Wis. Stat. §782.04 (2013-14)." Dkt. No. 9-2 at 2.

On April 19, 2013—while the other two *habeas* petitions remained pending—Schmieder filed a motion to withdraw as the petitioner's counsel in the Brown County Circuit Court. See State v. Lee, Brown County Case No. 2002CF000886 (available at https://wcca.wicourts.gov). On October 4, 2013, Schmieder filed a motion for an extension of time to file a no-merit report in the Wisconsin Court of Appeals. Dkt. No. 9-2 at 2-3. She explained that she had filed a motion to withdraw in the circuit court, and that the circuit court had declined to rule until Schmieder asked the Wisconsin Court of Appeals for an extension of time to file a no-merit report. Id. Three days later, the Wisconsin Court of Appeals granted Schmieder's motions to withdraw as the petitioner's attorney and for an extension of time for filing the no-merit report. Id. at 3.

In November 2013, the Wisconsin Supreme Court dismissed the *habeas* petition filed there as moot, reasoning that the Wisconsin Court of Appeals had granted the petitioner an extension to file a no-merit appeal. Id. Schmieder filed a no-merit notice of appeal on December 2, 2013. Id. The petitioner "promptly filed a motion to discharge Schmieder, strike the no-merit notice of appeal, and grant permission for him to pursue an appeal or postconviction motion pro se." Id. On December 10, 2013, the Wisconsin Court of Appeals issued an order stating that that the petitioner's motion "confirms that he understands the consequences of discharging his counsel so that he can proceed pro se." Dkt. No. 24-3. But the court decided to defer ruling on the petitioner's motion:

5

> Before we rule on the motion, [the petitioner] must inform this court whether he wishes to proceed to briefing in the present appeal or return to the circuit court with a postconviction motion. If it is the latter, the present appeal will be dismissed without prejudice and we will extend the time for [the petitioner] to file his pro se postconviction motion.

Dkt. No. 24-3 at 1-2. The petitioner informed the Wisconsin Court of Appeals that he did not wish to proceed with his appeal; on December 27, 2013, the court granted the motion dismissing the appeal, discharging Schmieder and giving the petitioner sixty days to file "a postconviction motion." Dkt. No. 24-4 at 1-2. After the Wisconsin Court of Appeals granted the motion, the petitioner "elected to voluntarily dismiss the appeal and pursue his issues in the circuit court by prosecuting the writ of habeas corpus filed in that court." Dkt. No. 9-2 at 3.

On February 7, 2014, the Brown County Circuit Court denied the *habeas* petition pending there. Dkt. No. 20 at 25. As the court explained,

> [s]ince the Petition was filed, the Court has engaged in correspondence with [the petitioner], his appellate counsel, and the State Public Defender's Office[] to attempt to arrive at a point where it would be appropriate for the Court to address the motion. Specifically, at one point, appellate counsel was going to file a no merit report so that [the petitioner] would then have the opportunity to submit his own position [and] the Court of Appeals would then have the opportunity to consider the merits of any potential appellate issues.

> The Court was under the impression, at one point, that [the petitioner] was in agreement with appellate counsel filing a no merit report. However, the Court has now received notice that the Court of Appeals would not pursue the no merit report filed by appellate counsel based upon correspondence from [the petitioner]. Notably, on December 27, 2013, the Court of Appeals extended the time for [the petitioner] to file a postconviction [motion] for 60 days from the date of the order. Therefore, [the petitioner] has until February 25, 2014 to file a postconviction motion with this Court, which if decided

6

contrary to [the petitioner's] interest, he could then appeal to the Court of Appeals.

Habeas corpus is an extraordinary writ and is available to a petitioner only under limited circumstances. <u>State ex rel. Haas v. McReynolds</u>, 2002 WI 43, ¶12, 252 Wis. 2d 133, ¶12, 643 N.W.2d 771, ¶12. An individual seeking habeas corpus relief must demonstrate: (1) that his or her liberty is restrained; (2) that the restraint was imposed without jurisdiction or contrary to constitutional protections; and (3) that there was no other adequate remedy available in the law. <u>Id.</u>

<u>Id.</u> at 24-25. The court concluded that it could not grant relief because the petitioner "[could not] demonstrate that he ha[d] no other adequate remedy available at law." <u>Id.</u> at 25. The court explained that the petitioner could "challenge his convictions . . . by filing a postconviction motion with [that] Court and, if necessary, an appeal with the Court of Appeals." <u>Id.</u>

Rather than exercising his reinstated right to seek postconviction relief, the petitioner appealed the circuit court's denial of his *habeas* petition to the Wisconsin Court of Appeals. Dkt. No. 9-2. While that appeal was pending, the petitioner filed a motion in the Wisconsin Court of Appeals to compel Schmieder to turn over her files. Dkt. No. 24-5. Upon the court's order to respond, Schmieder stated that she had already done so in February of 2013. Dkt. No. 24-7. Concluding that the petitioner did not need Schmieder's files to appeal the order denying his *habeas* petition, the Wisconsin Court of Appeals denied the motion. <u>Id.</u>

On October 13, 2015, the Wisconsin Court of Appeals affirmed the circuit court's order denying the *habeas* petition, finding that (1) the petitioner filed his petition in the wrong court, dkt. no. 9-2 at 4; (2) the petitioner had other

adequate remedies at law, id. at 5; and (3) the "petition failed to establish ineffective assistance of appellate counsel." Id. The Wisconsin Supreme Court denied review on January 11, 2016. Dkt. No. 9-4 at 1.

  C. Federal *Habeas* Petition (Dkt. No. 1)

  The petitioner filed his federal *habeas* petition in this court on July 18, 2016. Dkt. No. 1. On August 22, 2016, the court screened the petition under Rule 4 of the Rules Governing §2254 Cases. Dkt. No. 6. The court found that the petition asserted two claims—"(1) ineffective assistance of counsel; and (2) violation of his due process right to appeal his conviction by the state courts, which permitted his trial counsel to file a late no-merit report." Id. at 2. The court allowed the petitioner to proceed on both. Id. at 3.

  On October 19, 2016, the respondent filed a motion to dismiss the petition as untimely under the one-year limitation period in 28 U.S.C. §2244(d)(1). Dkt. No. 9. at 1, 4. She argued that (1) Wisconsin law initially required the petitioner to file a notice of appeal or a postconviction motion sixty days after the filing of the last transcript of the petitioner's trial, id. at 5 (citing Wis. Stat. §809.30(2)(h)); (2) the petitioner filed nothing before those sixty days expired on February 21, 2011, id.; (3) the Wisconsin Court of Appeals reinstated the petitioner's right to file postconviction motions, resetting the date the petitioner's conviction became final for purposes of AEDPA [Antiterrorism and Effective Death Penalty Act of 1996], id. at 5-6; (4) that reinstatement extended the petitioner's deadline to file a postconviction motion or notice of appeal another sixty days, or until March 3, 2013, id. at 6; (5)

8

relying instead on his then-pending *habeas* petition in the Brown County Circuit Court, the petitioner filed no new postconviction motion, id.; (7) litigation of that *habeas* petition lasted until the Wisconsin Supreme Court denied review on January 7, 2016, id. at 6-7; and (8) the petitioner listed a filing date of June 21, 2016 for his federal *habeas* petition. Id. at 7.

The respondent asserted that the timeliness of the federal *habeas* petition hinged on whether the Brown County petition tolled the statute of limitations, which in turn depended on whether the petitioner "properly filed" his Brown County petition. Id. The respondent argued that although it also considered "alternative grounds," "[t]he Wisconsin Court of Appeals clearly rejected . . . [the petitioner's] claim because he filed it in the wrong court." Id. at 9. The respondent deduced from this that the petitioner did not properly file the Brown County petition as a matter of law. Id. (citing Carey v. Saffold, 536 U.S. 214 (2002); Brooks v. Walls, 301 F.3d 839, 841 (7th Cir. 2002); Gray v. Briley, 305 F.3d 777, 779 (7th Cir. 2002)). She asserted that because the petitioner did not properly file the Brown County petition, that petition did not toll the statute of limitations. Id. at 10. And she calculated that because the petition did not toll the statute of limitations, the limitations period expired on March 3, 2014, over two years before the petitioner filed his federal petition. Id.

The petitioner responded that his petition was timely because he filed it within a year of the Wisconsin Supreme Court's order denying review of the Brown County petition. Dkt. No. 14 at 13. The petitioner also identified the actions of Schmieder that he claims delayed his direct appeal. Id. at 3-13.

9

The respondent replied that the petitioner's timeliness argument was "wrong because his conviction became final when he failed to file any post-conviction motions in his reinstated . . . direct appeal." Dkt. No. 16 at 1. She asserted that the petitioner's focus on the actions of Schmieder that allegedly delayed his direct appeal overlooked the Wisconsin Court of Appeals' reinstatement of the petitioner's direct appeal rights. Id. at 2.

On January 23, 2018, this court denied without prejudice the respondent's motion to dismiss the petition. Dkt. No. 17. The court noted that in order to "calculate whether the AEDPA one-year statute of limitations had run by the time the petitioner filed his federal *habeas* petition, it first [had to] determine the date on which the petitioner filed his federal *habeas* petition." Id. at 9. The court applied the "mailbox rule" and concluded that the filing date was June 21, 2016. Id. at 11-12. The court found that under state law as applied to the petitioner's circuit court case, the petitioner "needed to file a notice of appeal from his conviction, or a §974.06 motion, by February 19, 2011." Id. at 12-13. "If that was as far as things got," the court noted, "the petitioner's conviction would have become final on February 19, 2011, and his June 21, 2016 federal *habeas* petition filed in the Eastern District of Wisconsin would be time-barred." Id. at 13.

The court observed, however, "that that was not as far as things got," because the Wisconsin Court of Appeals granted Schmieder's motion to extend the "deadline for filing a notice of no-merit appeal to November 29, 2013 and the deadline for filing the no-merit report to December 6, 2013." Id. at 13.

10

Noting that "[w]hen a state court reopens the period for direct review, the conviction 'is rendered nonfinal for purposes of 2244(d)(1)(A) during the pendency of the reopened appeal,'" the court concluded that the petitioner's conviction was rendered "nonfinal" for AEDPA purposes when the Wisconsin Court of Appeals granted Schmieder's motion to extend the petitioner's appeal deadlines. Id. at 14 (citing Jimenez v. Quarterman, 555 U.S. 113, 120 n.4 (2009)). At that point, the court found, "the one-year federal *habeas* clock under AEDPA had not started." Id.

The court observed that after granting the petitioner's motion to discharge Schmieder and dismissing his appeal, the Wisconsin Court of Appeals gave the petitioner "sixty days to file a post-conviction motion." Id. While the court could not determine the exact day that that sixty-day period had expired, it noted that:

> [w]hether the sixty-day period expired on February 25, 2014 or March 3, 2014, the petitioner did not do what the court of appeals instructed him to do. He did not file a post-conviction motion between December 27, 2013 and February 25, 2014, or between January 2, 2014 and March 3, 2014. Arguably, this means his conviction became final sixty days after the court of appeals issued its order. If so, the defendant needed to file his federal habeas petition by February 25, 2015 (or by March 3, 2015, under the respondent's calculations) to meet AEDPA's one-year limitations deadline. Again, his June 2016 petition would be time-barred in this scenario—by over a year.

Id. at 15.

The court explained that there was "another scenario that could impact the AEDPA one-year limitation deadline;" it pointed out that under AEDPA, the time during which a properly-filed application for state post-conviction or other

collateral review is pending does not count toward the one-year statute of limitations. Id. (citing 28 U.S.C. §2244(d)(2)). This court observed that the three *habeas* petitions the petitioner filed in the Wisconsin courts "were a form of 'other collateral review.'" Id. The court explained, however, that "in order for any one of those state *habeas* petitions to stop the AEDPA clock, the petitioner must have 'properly' filed them." Id. The court stated that in the Seventh Circuit, "state law determines whether a petition has been properly filed; if the state court accepted and entertained the petition on the merits, it was 'properly filed;' if the court rejected the petition as procedurally irregular, it was not 'properly filed.'" Id. (citing Freeman v. Page, 208 F.3d 572, 576 (7th Cir. 2000)).

The court reviewed the petitioner's three state *habeas* petitions, concluding that (1) the Wisconsin Court of Appeals struck the petition that the petitioner filed there as procedurally irregular, id. at 16; (2) the Wisconsin Supreme Court struck the petition the petitioner filed there as moot, id.; see also dkt. no. 9 at 2; and (3) the court did not have sufficient information to analyze the basis for the dismissal of the Brown County petition.[1] Id.

The court noted that the Wisconsin Court of Appeals affirmed the Brown County Circuit Court's dismissal of that petition because (1) the petitioner filed the petition in the wrong court, id. at 17; (2) the petitioner had an adequate remedy at law, id.; and (3) the petitioner's claim failed on the merits. Id. This

---

[1] At the time the court issued its order denying the respondent's motion to dismiss, it had not yet seen the Brown County Circuit Court's order denying the petitioner's *habeas* petition. The petitioner has now provided the court with that decision. Dkt. No. 20 at 24-26.

court expressed concern that the third basis for the Wisconsin Court of Appeals' decision suggested that the Brown County Circuit Court may have reached the merits of the petitioner's petition. Id. The court found that "[w]ithout the benefit of the circuit court's decision," it could not say whether the petitioner 'properly filed' that petition as a matter of law. Id. As the court explained,

> if the Brown County Circuit Court analyzed the procedural propriety of the petitioner's *habeas* claim, and came to a conclusion that it was procedurally irregular, then the petitioner's filing of his habeas claim in the Brown County Circuit Court did not stop the AEDPA clock. On the other hand, if the Brown County Circuit did not consider, and decide, that the petition was procedurally irregular, and instead based its decision to dismiss on the merits of the petitioner's ineffective assistance of counsel claims, then the filing of that petition did toll the AEDPA clock. . . . [T]his court cannot determine the answer to that question, because it does not have a copy of the Brown County Circuit Court's decision.

Id. at 19.

The court discussed the doctrine of equitable tolling, which can excuse an untimely filing when a petitioner shows that he diligently pursued his rights and that some extraordinary circumstance prevented a timely filing. Id. at 21 (citing Holland v. Florida, 560 U.S. 631, 649 (2010)). The court noted that both an attorney's abandonment of a petitioner and a petitioner's "inability to access vital papers" could constitute an extraordinary circumstance. Id. at 21-22 (citing Schmid v. McCauley, 825 F.3d 348, 350 (7th Cir. 2016); Socha v. Boughton, 763 F.3d 674 (7th Cir. 2014)).

The court considered the petitioner's arguments as to how Schmieder's representation and alleged abandonment affected his postconviction litigation.

13

Id. at 19-21. While the court began to analyze whether Schmieder's alleged abandonment or the petitioner's alleged inability to access his court records constituted circumstances warranting equitable tolling, it ultimately concluded that it had inadequate information to make such a decision. Id. at 22-26. The court stated that on the then-available record, it could not "make a final determination on the question of whether the petitioner's §2254 petition was untimely until the parties directly address[ed] the court's concerns regarding statutory and equitable tolling." Id. at 26.

D.    Petitioner's Brief in Support of Petition For Writ of *Habeas Corpus*; and In Opposition to the Doctrines of Equitable Tolling Advanced by the Respondent Counsel (Dkt. No. 20)

The petitioner argues that despite his best efforts, the state courts and Schmieder caused the delays in his state court filings. Dkt. No. 20 at 5, 18. He asserts that the Wisconsin Court of Appeals erred when it allowed Schmieder to file a late no-merit brief. Id. at 7-8. The petitioner stresses that when the Wisconsin Court of Appeals eventually accepted Schmieder's no-merit brief, Schmieder was no longer his attorney, and argues that the Wisconsin Court of Appeals' order suggesting that he file a postconviction motion or notice of appeal with the circuit court "was not binding on [him] because his writ was already pending in the circuit court." Id. at 14.

He contends that his federal *habeas* petition was timely because Schmieder was dilatory in providing him with his transcripts. Id. at 12. He states that he had no other choice but to attack his convictions through his *habeas* petitions in the Wisconsin courts, and thus that his *habeas* petitions

14

were "properly filed." Id. at 13-14. The petitioner reiterates that he timely filed his federal petition because he filed it within a year of the Wisconsin Supreme Court's order denying review of the Brown County petition. Id. at 15. He concludes that he properly filed the Brown County petition because that court (1) "accepted and entertained the petition on the merits," id. at 16; (2) "held three hearings," id.; (3) did not reject the petition as procedurally irregular, id.; (4) "wrongly assumed the writ should be removed to allow for the filing of a postconviction motion," id.; and (5) "never claimed that the writ was not properly filed." Id. The petitioner argues that he properly filed the Brown County petition under State v. Knight, 168 Wis. 2d 509 (1992); he says that in that case, the Wisconsin Supreme Court clarified that the circuit court—"not the Court of Appeals"—is the proper forum for a claim of ineffective assistance. Id. at 17.

E.    Respondent's Brief on Statutory and Equitable Tolling (Dkt. No. 24)

1.    *Statutory tolling*

The respondent contends that the petitioner's Brown County *habeas* petition did not statutorily toll AEDPA's statute of limitations because the petitioner did not properly file it as required by 28 U.S.C. §2244(d)(2). Dkt. No. 24 at 10, 16. The respondent reasons that (1) the petitioner filed that petition in the wrong court as a matter of state law, and (2) the Brown County Circuit Court did not address the merits of the petition. Id. at 12.

The respondent argues that Wisconsin law required the petitioner to file his claim that Schmieder abandoned him in a petition to the Wisconsin Court

15

of Appeals rather than the circuit court. Id. at 13 (citing State ex rel. Santana v. Endicott, 288 Wis. 2d 707, 712 (Ct. App. 2005)). She states that the remedy for such a claim—a restoration of the petitioner's direct appeal rights—is not within a Wisconsin circuit court's authority to grant. Id. (citing State ex rel. Kyles v. Pollard, 354 Wis. 2d 626, 640 (2014)). The respondent stresses that a petition filed in the wrong court is not "in compliance with the applicable laws and rules governing filings." Id. at 13 (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000)). Conceding that "portions" of the Seventh Circuit's decisions in Johnson and Freeman support the conclusion that the petitioner properly filed the Brown County petition if the circuit court addressed its merits, the respondent states that "[i]t is difficult [] to square that language with Bennett, which makes clear that a state collateral attack must be filed in the correct court under state law to be considered properly filed." Id. at 14 (citing Johnson v. McCaughtry, 265 F.3d 559, 564 (7th Cir. 2001); Freeman, 208 F.3d at 576; Bennett, 531 U.S. at 8).

The respondent asserts that even if the Brown County Circuit Court's treatment of the *habeas* petition was relevant to whether the petitioner properly filed the petition, considering that court's decision in isolation would "improperly ignore[] what happened in the court of appeals." Id. She states that the Wisconsin Court of Appeals "clearly and expressly concluded that [the petitioner] filed his petition in the wrong court." Id. The respondent argues that focusing solely on the circuit court's consideration of the petition also conflicts with the Seventh Circuit's decisions in Morales v. Boatwright, 580 F.3d 653,

16

658 (7th Cir. 2009), <u>Smith v. Battaglia</u>, 415 F.3d 649, 653 (7th Cir. 2005) and <u>Johnson</u>, 265 F.3d at 564. <u>Id.</u> at 15. She says those decisions "examined how state appellate courts have construed filings in state trial courts when determining whether they were properly filed." <u>Id.</u> According to the respondent, the Wisconsin Court of Appeals' determination that the petitioner filed the Brown County petition in the wrong court was a procedural ruling separate and independent from its consideration of the petition's merits. <u>Id.</u>

The respondent contends that the circuit court's consideration of the petition shows that the petitioner filed it in the wrong court; the respondent states that rather than addressing the petition's merits, the circuit court determined that the petitioner had another adequate and available remedy available to him through his restored appeal rights, and that *habeas* relief was thus unwarranted. <u>Id.</u> at 16.

The respondent argues that if the Wisconsin Court of Appeals erred in determining that the petitioner needed to file his petition in that court, that error was one of state law unreviewable by this court. <u>Id.</u> at 17 (citing <u>Lechner v. Frank</u>, 341 F.3d 635, 642 (7th Cir. 2003)). The respondent reasons that the Wisconsin Court of Appeals relied on (1) its own decision in <u>Santana</u> to conclude that the proper venue for a claim of abandonment by appellate counsel is the Wisconsin Court of Appeals, and (2) the Wisconsin Supreme Court's decision in <u>Kyles</u> to find that a Wisconsin circuit court lacks authority to grant reinstatement of appeal rights. <u>Id.</u> (citing <u>Santana</u>, 288 Wis. 2d 707; <u>Kyles</u>, 354 Wis. 2d 626).

The respondent adds that the petitioner misinterprets <u>Knight</u> and <u>Santana</u>, contending that (1) <u>Knight</u> holds that the Wisconsin Court of Appeals—not the circuit court—is the correct court to litigate an ineffective assistance of appellate counsel claim, and (2) <u>Santana</u> clarifies that claims that counsel abandoned a defendant through a failure to file an appeal are properly presented in a <u>Knight</u> petition. <u>Id.</u> at 18 (citing <u>Knight</u>, 168 Wis. 2d at 518-19; <u>Santana</u>, 288 Wis. 2d at 712-13).

2. *Equitable tolling*

The respondent asserts that the petitioner is not entitled to equitable tolling because the petitioner "did not act diligently" and no extraordinary circumstances prevented him from filing his federal *habeas* petition. <u>Id.</u> at 19. She reiterates her argument that because the statute of limitations did not start to run until the petitioner's reinstated appeal rights expired, "Schmieder's failure to take an appeal on [the petitioner's] behalf and her alleged abandonment of him are irrelevant to the issue of tolling." <u>Id.</u> at 19-20. The respondent contends that "anything Schmieder might have done after she was appointed to represent [the petitioner] until she obtained the extension of time to start the no-merit proceedings should have no effect on [the petitioner's] equitable tolling claim." <u>Id.</u> at 20.

The respondent argues that "[n]othing that happened in the circuit court justifies equitably tolling." <u>Id.</u> at 21. She explains that (1) the circuit court informed the petitioner that it lacked the authority to reinstate his appeal rights, (2) the circuit court told the petitioner that the Wisconsin Court of

18

Appeals had reinstated his appeal rights, (3) the petitioner does not claim that he never received the order reinstating his appeal rights, (4) when the circuit court told the petitioner that it could not reinstate his appeal rights, his deadline to pursue postconviction relief had not passed, and (5) because that deadline had not passed, the "statute of limitations had not yet began to run, and there was nothing to equitably toll at that point." Id. The respondent says that although "two Wisconsin courts had told [the petitioner] that his direct appeal rights had been reinstated," the petitioner chose to let those rights pass while he appealed the circuit court's denial of his *habeas* petition. Id. at 21-22.

The respondent argues that Schmieder's alleged failure to give the petitioner his court records was not an "extraordinary circumstance that prevented [the petitioner] from filing his petition." Id. at 22. Again, the respondent contends that any failure of Schmieder to provide records "between the end of 2011 and February 2013" is irrelevant because "[t]he statute of limitations . . . was not running during that time." Id. She stresses that "there is every reason to believe that Schmieder gave [the petitioner] the court record in time to use it to take a direct appeal," noting that (1) Schmieder's letter to the petitioner dated February 11, 2013 said that she was attaching the record, (2) "[Schmieder] later told the court of appeals that she had turned over her file to [the petitioner] on February 13, 2013," (3) "there is no reason to believe that Schmieder was being untruthful when she told both [the petitioner] and the court of appeals that she sent [the petitioner] the record," and (4) the letter

19

from Ehmann to the petitioner "is not evidence that [the petitioner] did not receive the record." <u>Id.</u> at 23.

The respondent notes the petitioner's argument that Schmieder "did not or failed to provide petitioner with a copy of his records in a timely manner, waiting over '30' days after petitioner had to respond." <u>Id.</u> at 23-24 (quoting dkt. no. 20-9 at 12). The respondent interprets this statement as a concession by the petitioner that Schmieder sent the petitioner his record. <u>Id.</u> at 24. The respondent discounts the petitioner's contention that "Schmieder sent him the file after the time expired for him to respond to the no-merit report," clarifying that the petitioner fired Schmieder before she ever filed a no-merit report. <u>Id.</u> Because the respondent argues that the petitioner does not allege that he did not have the record early enough to file a timely postconviction motion, she asserts that "[a]ny delay in receiving the record does not justify tolling." <u>Id.</u>

The respondent stresses that even if the petitioner never received his circuit court records, that did not prevent the petitioner from ultimately filing his federal *habeas* petition and did not prevent him from filing the petition before the statute of limitations period expired. <u>Id.</u> She notes that (1) "[t]hree of the four claims [the petitioner] raises in his petition assert errors during his state habeas proceedings," for which he does not need records of his underlying conviction, <u>id.</u>; and (2) the petitioner previously raised the ineffective assistance claim to the Wisconsin Court of Appeals when appealing the circuit court's denial of his *habeas* petition without access to the records, and thus, did not need them to raise the same claim in his petition to this

20

court. Id. at 24-25. The respondent concludes that the petitioner "missed the deadline because he decided not to pursue his reinstated direct appeal rights, not because he did not have the record." Id. at 25.

The respondent acknowledges the petitioner's argument against this court's review of equitable tolling; she says that while that argument "focuses on Schmieder's failure to start a direct appeal," the Wisconsin Court of Appeals remedied any resulting error when it reinstated the petitioner's direct appeal rights, and that any such error is "irrelevant to the statute of limitations and equitable tolling." Id. Regarding the petitioner's allegation that the state courts "conspired to reinstate his appeal rights to avoid giving him an opportunity to show that Schmieder abandoned him," the respondent contends that (1) the state courts "did nothing improper, and any errors they might have made were matters of state law," id. at 26; (2) the state courts provided the petitioner with the same remedy that he would have received had he shown that Schmieder abandoned him—a reinstatement of his appeal rights, id., and (3) because "the state courts' allegedly improper actions all occurred before the statute of limitations began to run," they are irrelevant to equitable tolling. Id. As to the petitioner's argument that he acted diligently and that extraordinary circumstances prevented his filing, the respondent asserts that the claim is premised on Schmieder abandoning the petitioner and the alleged conspiracy to reinstate the petitioner's appeal rights, events which occurred prior to the date on which the limitations period began to run. Id.

The respondent stresses that the petitioner did not have a right to a merits appeal with counsel, only a right to have counsel "review his case and determine whether there were any meritorious issues for appeal." Id. at 26-27. She says this in this case, Schmieder conducted that review and found no merit to any issue. Id. at 27. The respondent notes that at that point, the petitioner had the option to have Schmieder file a no-merit report or pursue an appeal on the merits *pro se* or with retained counsel. Id. The passing of his deadlines to appeal, the respondent argues, "started the running of his federal statute of limitations." Id.

## II. Analysis

### A. Statute of Limitations under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 provides a one-year limitation period for a petition seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). That one-year period begins to run from the latest of four events:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

22

28 U.S.C. §2244(d)(1)(A)-(D). The petitioner does not claim that any state action created an impediment to filing that later was removed; he does not claim a right newly recognized by the United States Supreme Court, or that his *habeas* claims are based on newly discovered evidence. That leaves §2244(d)(1)(A), which provides that the one-year period begins to run from the date the petitioner's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review.

On December 27, 2013, the Wisconsin Court of Appeals reinstated the petitioner's right to appeal his conviction by giving him sixty days to file a "postconviction motion under [Wis. Stat. §809.30.]" Dkt. No. 24-4 at 1-2. Sixty days from December 27, 2013 was February 25, 2014. As the respondent noted in her motion to dismiss the petition, however, because the dockets of the Wisconsin Court of Appeals and the Brown County Circuit Court reflect that the reinstatement occurred on different dates, the respondent decided to use the later of the two dates—January 2, 2014. Dkt. No. 9 at 6 n. 3. The court will do the same. Assuming that the petitioner's right to appeal was reinstated on January 2, 2014, the petitioner's conviction became final sixty days later, on March 3, 2014. AEDPA's one-year limitation period expired one year after that, on March 3, 2015. This court has found that June 21, 2016 was the filing date for the petitioner's federal *habeas* petition for the purposes of calculating the statute of limitations. Dkt. No. 17 at 12. Thus, if there is no event that tolled the AEDPA's one-year limitation period, the petition is untimely and the court must dismiss it.

The petitioner filed three *habeas* petitions in three Wisconsin courts on April 12, 2013. Dkt. No. 9-2 at 2; see also State v. Lee, Brown County Case No. 2002CF000886 (available at https://wcca.wicourts.gov). Two of those petitions—the ones he filed with the Wisconsin Court of Appeals and the Wisconsin Supreme Court—are irrelevant to the court's tolling analysis, because the Wisconsin courts dismissed them prior to the reinstatement of the petitioner's appeal rights. Dkt. No. 9-2 at 2-3. However, on January 11, 2016 the Wisconsin Supreme Court denied review of the petition filed in the Brown County Circuit Court. Dkt. No. 9-4 at 1. Therefore, *if* the Brown County Circuit Court petition tolled the statute of limitations, the petition in this court would be timely.

B.     Statutory Tolling

1.     *Standard*

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. §2244(d)(2). An application is pending for purposes of §2254(d)(2) "as long as the ordinary state collateral review process is 'in continuance'—i.e., 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post conviction procedures, by definition it remains 'pending.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002) (quoting Webster's Third New International Dictionary 1669 (1993)). "An application is 'filed' . . . when it is delivered to, and accepted

24

by, the appropriate court officer for placement into the official record." <u>Bennett</u>, 531 U.S. 4, 8 (2000). "For statutory tolling to apply, the state post-conviction motion must be 'properly filed.'" <u>Ray v. Clements</u>, 700 F.3d 993, 1003 (7th Cir. 2012). "That determination is governed by state procedural law." <u>Id.</u> (citing <u>Bennett</u>, 531 U.S. at 8).

An application for post-conviction relief is "properly filed" under AEDPA "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as "the form of the document, the time limits upon its delivery the court and office in which it must be lodged, and the requisite filing fee." <u>Bennett</u>, 531 U.S. at 8 (collecting cases). The fact that the state court imposed a procedural bar does not necessarily mean that the petition was not "properly filed." <u>Bennett</u>, 531 U.S. at 9 ("the question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar"). It is a "condition to filing, as opposed to a condition to obtaining relief," that must be satisfied to be eligible for tolling under AEDPA. <u>Id.</u> at 11. "If a state court accepts and entertains the petition on its merits, it has been 'properly filed,' but if the state court rejects it as procedurally irregular, it has not been 'properly filed.'" <u>Johnson v. McCaughtry</u>, 265 F.3d 559, 564 (7th Cir. 2001) (citing <u>Freeman</u>, 208 F.3d at 576). A petition filed in the wrong state court does not toll the statute of limitations. <u>Bennett</u>, 531 U.S. at 8; <u>see also</u> <u>McCaughtry</u>, 265 F.3d at 564-65.

25

2.   *Application*

The Brown County petition did not statutorily toll AEDPA's limitations period for the petitioner's federal petition; the petitioner did not properly file the petition because as a matter of state law, he filed the petition in the wrong court. The Brown County Circuit Court petition asserted that Schmieder provided the petitioner with ineffective assistance of appellate counsel—that Schmieder abandoned the petitioner. Dkt. No. 20 at 24. Although the circuit court dismissed the petition because the plaintiff had not shown that he had no adequate remedy at state law (rather than because he'd filed his ineffective-assistance-of-appellate-counsel claim in the wrong court), when the petitioner appealed that dismissal, the Wisconsin Court of Appeals held that the circuit court was correct to dismiss the petition because "a claim that postconviction or appellate counsel abandoned a defendant must be presented to the court of appeals by a ***Knight*** petition." Dkt. No. 9-2 at 4.

The petitioner now asserts that

> the Court of Appeals was wrong in saying that a petitioner must file a writ of habeas corpus in the Court of Appeals on claims of ineffective assistance. In <u>State v. Knight</u>, 168 Wis.2d 509, 522 (1992), the Supreme Court of Wisconsin made it clear that the proper fo[ru]m to file is in the Circuit Court, not the Court of Appeals. The Court of Appeals case of ["State ex rel. Santana v. Endicott,]—709 N.W.2d 515, 519 (Wis. Ct. App. 2005) did not over-rule <u>Knight</u>, a Supreme Court ruling, on the proper forum.

Dkt. No. 20 at 17. It is the petitioner who is wrong about the <u>Knight</u> court's holding. The Wisconsin Supreme Court held in <u>Knight</u> that "to bring a claim of ineffective assistance of appellate counsel, a defendant must petition *the appellate court that heard the appeal* for a writ of habeas corpus." <u>Knight</u>, 168

26

Wis.2d at 522 (emphasis added). The petitioner is correct that Santana did not (and could not) overrule Knight, but because he mischaracterizes the holding in Knight, he does not understand that Santana *relied* on the holding in Knight (and on State *ex rel.* Smalley v. Morgan, 211 Wis.2d 795 (Ct. App. 1997)) in concluding that a defendant who "complains that counsel failed to file a no-merit appeal or to move for postconviction relief" must bring a Knight petition to the court of appeals. Santana, 288 Wis.2d at 711-12. See also, *e.g.*, State *ex rel.* Warren v. Meisner, 392 Wis. 2d 1, 14 (2020) (holding that the Court of Appeals is the proper forum for "a claim relating to the alleged ineffectiveness of counsel after conviction."). Under Knight and Smalley and Santana, the petitioner should have brought his claim about Schmieder having abandoned him in a Knight petition in the Wisconsin Court of Appeals.

Nor did the Brown County Circuit Court entertain the merits of the petitioner's claim that Schmieder abandoned him or otherwise performed ineffectively. Dkt. No. 20 at 24-26. Rather, that court found that

> [h]abeas corpus is an extraordinary writ and is available to a petitioner only under limited circumstances. State ex rel. Haas v. McReynolds, 2002 WI 43 ¶12, 643 N.W.2d 771, ¶12. An individual seeking habeas corpus relief must demonstrate: (1) that his or her liberty is restrained; (2) that the restraint was imposed without jurisdiction or contrary to constitutional protections; and (3) that there was no other adequate remedy available in the law. Id.
>
> The Court cannot grant [the petitioner's] petition because he cannot demonstrate that he has no other adequate remedy available at law. Specifically, [the petitioner] is able to challenge his convictions in case number 02-CF-886 by filing a postconviction motion with this Court and, if necessary, an appeal with the Court of Appeals. Consequently, the Petition will be denied.

Id.

The Brown County Circuit Court did not analyze the petitioner's claims about Schmeider or her performance. It did nothing more than find that a *habeas* petition was not the proper vehicle for the petitioner to use because he could not meet the test for *habeas* relief. (The Brown County Circuit Court also told the petitioner in its February 7, 2014 order that he still could file a postconviction motion in that court and told him that he had until February 25, 2014 to do so. Dkt. No. 20 at 25.)

The petitioner now argues that "[c]learly when looking at the Court of Appeals ruling on why the Circuit Court denied the writ, the Court of Appeals acknowledged that the Court reach the ruling because it considered the merits of the writ." Dkt. No. 20 at 17. He says the respondent would be hard-pressed to argue otherwise. Id. This court disagrees. The Court of Appeals properly noted in the fact section of its decision that the circuit court "denied [the petitioner's] habeas corpus petition because [the petitioner] filed to demonstrate he had no other adequate remedy at law." Dkt. No. 9-2 at 3. The Court of Appeals did not say that the circuit court reached the merits of the ineffective assistance/abandonment claim. Rather, the Court of Appeals identified several reasons—including some the circuit court had not mentioned—why the circuit court was right to dismiss the petition: the fact that the petitioner filed it in the wrong court, dkt. no. 9-2 at 4; the fact that the petitioner had an adequate remedy at state law, dkt. no. 9-2 at 5; and the fact that the petitioner did not establish ineffective assistance of counsel, dkt. no. 9-2 at 5. It was the *Court of Appeals*, not the circuit court, that addressed the

28

merits of the petition filed in the Brown County Circuit Court, and it did so *despite* the fact that the court whose decision it was reviewing—the circuit court—had *not* addressed those merits.

Because the petition was not properly filed as a matter of state law, it did not toll the limitation period under AEDPA.

     C.    <u>Equitable Tolling</u>

          1.    *Standard*

28 U.S.C. §2244(d) allows for equitable tolling of the statute of limitations. <u>Holland v. Florida</u>, 560 U.S. 631 (2000). A petitioner is entitled to equitable tolling upon demonstrating that (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way that prevented timely filing. <u>Id.</u> at 649. Equitable tolling is available only when a petitioner establishes both "elements" of <u>Holland</u>. <u>Menominee Indian Tribe of Wis. v. U.S.</u>, ___ U.S. ___, 136 S. Ct. 750, 755 (2016). The burden of establishing equitable tolling grounds rests with the petitioner. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005). "[T]o qualify for equitable tolling, [the petitioner] ha[s] to demonstrate that he was reasonably diligent in pursuing his rights throughout the limitations period and until he finally filed his untimely habeas petition." <u>Carpenter v. Douma</u>, 840 F.3d 867, 870 (7th Cir. 2016). If a petitioner does not act diligently after the extraordinary circumstance ends and within the time remaining of the period of limitations, equitable tolling is unavailable. <u>Pace</u>, 544 U.S. at 418-19 (petitioner did not act diligently when he waited four years to file a state *habeas* petition after the claims became available and five months

after his state proceedings became final before filing a federal *habeas* petition). The diligence prong "covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." Menominee Indian Tribe, 136 S. Ct. at 756. "[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Id.

"[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Lombardo v. United States, 860 F.3d 547, 551 (7th Cir. 2017) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)). However, equitable tolling is a "'flexible' standard;" it is not a search for "a single trump card," but "an evaluation of the entire hand that the petitioner was dealt." Socha v. Boughton, 763 F.3d 674, 686 (7th Cir. 2014). Equitable tolling does not excuse a late federal *habeas* petition "simply because [the petitioner] was unable to obtain a complete trial transcript before he filed his §2254 petition." Lloyd v. Van Natta, 296 F.3d 630 (7th Cir. 2002). Negligence by counsel, such as missing a filing deadline, does not, standing alone, constitute an extraordinary circumstance warranting equitable tolling. Holland, 560 U.S. at 651-653. However, when coupled with failures to conduct necessary research and communicate with a client, such attorney negligence might constitute an extraordinary circumstance. Id. at 652-654. Abandonment by postconviction counsel can constitute an extraordinary circumstance warranting equitable tolling when the abandonment results in a procedural default. Maples v. Thomas, 565 U.S. 266, 281-283 (2012).

30

2.    *Application*

The record shows that no extraordinary circumstance prevented the petitioner from timely filing his federal *habeas* petition. The petitioner's numerous state court filings show that he knows how to file pleadings in court. The petitioner argues that Schmieder was the "extraordinary circumstance"— that she performed ineffectively throughout her representation, including when she failed to file a notice of appeal before the initial deadline to appeal lapsed in December of 2010. Dkt. No. 20 at 12-13. Even if that is true, the Wisconsin Court of Appeals *reinstated* the petitioner's right to seek postconviction relief in December of 2013. Dkt. No. 24-4 at 1-2. That reinstatement rendered the petitioner's conviction nonfinal. The statute of limitations did not start to run until the expiration of the time for seeking review of his conviction. Jimenez v. Quarterman, 555 U.S. 113, 120 (2009). The petitioner had sixty days from the time his right to seek postconviction relief was reinstated to either seek postconviction relief or ask for an extension of time to do so. Schmieder's failure to file an appeal back in 2010 does not constitute an extraordinary circumstance when the petitioner regained the ability to seek postconviction relief in late 2013 and early 2014.

Nor did the petitioner diligently pursue his rights. In its December 27, 2013 order reinstating his right to seek postconviction relief, the District III Court of Appeals told the plaintiff that while it could not give him legal advice on whether to file a postconviction motion or pursue the *habeas* petition that was pending in Brown County, it was going to give him additional time to file a

31

postconviction motion. Dkt. No. 24-4 at 2. The court already has noted that on February 7, 2014, the Brown County Circuit Court advised the petitioner that he still had time—eighteen days, in fact—to file a postconviction motion in that court. Dkt. No. 20 at 25.

The defendant did not do so. He did not take advantage of the opportunity the Court of Appeals had given him to seek postconviction relief. Even after the Brown County Circuit Court dismissed his *habeas* petition, he did not use the remaining eighteen days to either seek postconviction relief or ask for additional time to do so, even though the court went to the effort of reminding him that he still had time to do so. Instead, he appealed the decision of the Brown County Circuit Court denying his *habeas* petition to the Wisconsin Court of Appeals. That was the petitioner's choice, of course. But the fact that he did not take the opportunity provided to him and chose a different path does not warrant equitable tolling.

D.    Final Comments

Because the *habeas* petition filed with the Brown County Circuit Court did not toll the limitation period and because equitable tolling does not apply, the federal petition is untimely and the court will dismiss it.

The court notes that even if the federal petition had not been time-barred, the court would have denied it on the merits. Schmieder's failure to raise any issues on direct appeal did not constitute ineffective assistance of counsel. To sufficiently allege ineffective assistance of counsel, a petitioner must show (1) that counsel performed deficiently and (2) that that deficient

performance prejudiced the petitioner. See, *e.g.*, Preme v. Moore, 562 U.S. 115, 121 (2011). The errors the petitioner alleges that Schmieder committed occurred *before* the Wisconsin Court of Appeals reinstated the petitioner's direct appeal rights. They did not prejudice the petitioner because he got a second chance to appeal his conviction. He did not do so. He could have sought appointment of new counsel to file a postconviction motion. He did not do so. Nor did the Wisconsin Court of Appeals deny the petitioner his due process rights when it allowed Schmieder to file a no-merit report. That same order reinstated the petitioner's right to seek postconviction relief.

> E.    Conclusion

Because the petitioner filed his federal petition for writ of *habeas corpus* over two years after the one-year limitation period expired, the petition is untimely. Neither statutory nor equitable tolling apply. The court will deny the petition and dismiss the case.

## III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484

Case 2:16-cv-00930-PP   Filed 11/30/20   Page 33 of 34   Document 30

(2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petition was untimely.

## IV. Conclusion

The court **DENIES** the petition for writ of *habeas corpus*. Dkt. No. 1.

The court **ORDERS** that the petition is **DISMISSED**. The clerk will enter judgment accordingly.

The court **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 30th day of November, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**